Maureen CROSS and husband, I. C. Cross

v.

DEL WEBB'S HOTELS INTERNATIONAL, INC.

Civ. A. No. M–79–51–CA.

United States District Court, E. D. Texas, Marshall Division.

Dec. 20, 1979.

---

Rex Houston, Henderson, Tex., for plaintiffs.

Charles H. Clark, Tyler, Tex., for defendant.

MEMORANDUM OPINION

ROBERT M. PARKER, District Judge.

Plaintiffs, Texas domiciliaries, brought this action against Defendant, DEL WEBB'S HOTELS INTERNATIONAL, INC., a Nevada corporation, contending that the injuries Ms. Cross received while a guest in Defendant's hotel were the result of Defendant's negligent failure to provide adequate protection and security. The Defendant has moved to dismiss for lack of *in personam* jurisdiction, pursuant to Rule 12(b)(2). The Court held an evidentiary hearing and heard oral argument from counsel on the issues raised by the Defendant's motion. The Court makes the following findings of fact and conclusions of law.

Over the years the Plaintiffs had established a relationship with the Defendant whereby the Plaintiffs were special guests of the Defendant's Mint Hotel several times during the year. A special guest of the Mint Hotel is a person who is a good customer of the Hotel and who has played in the casino with a good line of credit; a Hotel guest is classified as a special guest if he puts a substantial amount of money into play in the casino. Mr. and Mrs. Cross were classified as special guests of the Mint Hotel, and the Defendant provided them with complimentary lodging, food and beverage, three to four times annually. Defendant regularly solicited the Plaintiffs' attendance by invitational letters and telephone calls. Under this arrangement, Defendant would mail or phone an invitation into Texas to the Plaintiffs; when the Plaintiffs accepted the Defendant's invitation, the Defendant would mail an airplane ticket to the Plaintiffs. Once the Plaintiffs arrived in Las Vegas, the Defendant provided lodging, food, and beverage, to the Plaintiffs in exchange for the action Mr. Cross would generate at the gaming tables in the Defendant's hotel. The Defendant solicited Plaintiffs' attendance at their hotel pursuant to this special guest arrangement because it was a profitable business relationship for the hotel, and it was in their interest to have Mr. and Mrs. Cross gamble in their casino.

The Defendant solicited the Plaintiffs' attendance over the New Year's weekend, December 30–January 1, 1978–79, by an invitational letter sent to the Plaintiffs' residence in Texas. The Plaintiffs accepted the invitation; the Defendant mailed commercial airline tickets to the Plaintiffs, and the Plaintiffs traveled to Las Vegas for the three-day holiday period. While guests at the Defendant's Mint Hotel, the Plaintiffs were assaulted and robbed in the hotel's elevator, and Mrs. Cross received personal injuries. The Plaintiffs allege that the Defendant owed a duty to all guests to provide secure lodging; further, the Plaintiffs allege that the Defendant breached this duty, proximately causing the assault committed against the Plaintiffs.

The Defendant maintains a regular list of special guests, and all of these special guests receive invitational letters three to four times annually. On the New Year's weekend in question, Defendant sent out 550–600 invitational letters to special guests; 350–400 of these special guests traveled to Las Vegas and stayed at the Mint Hotel. Of the special guests invited, 35–40 were from Texas; thirty of the special guests at the Mint Hotel on the New Year's weekend were Texas residents.

In the casino business, a "Texas-type player" is one who, in addition to gambling large amounts of money, is a verbose, good-natured person. Las Vegas casinos solicit gamblers from Texas because of the money they wager and because of the action they generate from other players. It is in the business interest of the Defendant and all Las Vegas casinos to have Texas-personality players gamble at their casinos.

The Defendant conducts no public advertising in Texas and maintains no travel agents in Texas. The Defendant is not registered with the Secretary of State to do business in Texas.

The Defendant contends that it does not have sufficient contacts with Texas for this Court to maintain any jurisdiction over this litigation. Defendant contends that it does not do business in Texas and is not subject

to service of process under Article 2031b, the Texas "long-arm" statute.

Plaintiffs support their allegation of proper jurisdiction by contending that Defendant's solicitation of customers in Texas by mailing "special guest" invitations into Texas constitutes doing business in Texas under Article 2031b.

▪ A plaintiff filing suit in a federal district court sitting in Texas can invoke Article 2031b, the Texas long-arm statute, under either Rule 4(d)(7) or Rule 4(e), F.R. Civ.P.

▪ The party seeking to invoke the jurisdiction of a federal court has the burden of establishing that jurisdiction exists, and the burden is not shifted when the defendant challenges jurisdiction under Rule 12(b)(2), F.R.Civ.P. *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 490 (5th Cir. 1974).

▪ The Court is to consider all facts alleged by the plaintiff as being true for purposes of resolving a jurisdictional issue.

Article 2031b provides that a foreign corporation ". . . shall be deemed doing business in this State by entering into a contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this state . . ." Tex.Rev.Civ.Stat.Ann., § 2031b(4).

▪ A dual test is used to determine whether the state long-arm statute confers jurisdiction over a nonresident defendant in a diversity lawsuit. First, the nonresident defendant must in fact be amenable to service under the state statute; second, if the state statute has been complied with, then federal law must be applied to determine whether assertion of jurisdiction over the defendant comports with due process. *Walker v. Newgent*, 583 F.2d 163 (5th Cir. 1978).

▪ The Texas Supreme Court has held that Article 2031b reaches as far as the United States Constitution will permit. *U-Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977). An analysis of Article 2031b is to focus on the constitution-al limitations of the due process clause rather than determining whether the Defendant's activities fall within the technical meaning of "doing business." *Id.*

The two leading cases on the due-process limitations on long-arm jurisdiction are *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). *International Shoe* stands for the proposition that it is fair to subject a nonresident corporation to *in personam* jurisdiction if the corporation maintains systematic and continuous operations within the state. Discarding the notion of corporate presence in a state, the Supreme Court in *International Shoe* established an analysis that focuses on whether the nonresident corporation's ties and contacts with the forum state are sufficient such that requiring a response to a lawsuit accords with the due process concept of fair play and substantial justice. *Id.*, 236 U.S. p. 320, 66 S.Ct. 154. *Hanson v. Denckla* limited the holding of *International Shoe* by requiring that the nonresident corporate defendant must purposefully conduct activities in the forum state in order for the defendant to be called on to defend a lawsuit. *Id.*, 357 U.S. p. 253, 78 S.Ct. 1228.

▪ The factors that the Court is to consider in determining whether assumption of jurisdiction by the forum state over the nonresident defendant will offend the due process concepts of fair play include the following: the quality, nature and extent of the activity in the forum state; the relative convenience of the parties; the benefits and protection of the laws of the forum state afforded the nonresident defendant; and the basic equities of the situation. *Wilkerson v. Fortuna Corp.*, 554 F.2d 745, 749 (5th Cir. 1977).

▪ The Defendant in the present case has conducted activities in Texas that go beyond mere solicitation. *International Shoe* would not allow this Court to assert *in personam* jurisdiction over the Defendant if the only activity in Texas was acceptance of the Defendant's special invitation offer by

the Plaintiffs. See *American Steel v. Cascade Steel,* 425 F.Supp. 301 (S.D.Tex.1975). In the present case, the Defendant has regularly performed duties called for by contracts made with Texans in Texas. Pursuant to the agreement Defendant made with Plaintiffs on the occasion in question, Defendant provided transportation to Las Vegas by mailing an airline ticket to the Plaintiffs in advance. Defendant purposefully undertakes this duty of contractual performance in Texas, and the Defendant has provided transportation to special guests who reside in Texas on a regular and continuous basis. There can be no doubt that had the Plaintiffs breached the contract in question and refused to go to the Mint Hotel following receipt of the airline ticket, the Defendant could have and would have invoked the protection afforded it by the Texas laws relating to breach of contract. Partial performance of contracts by the Defendant in Texas goes beyond mere solicitation of Texas gamblers.

Clearly, the Defendant's contacts with Texas were designed to result in a profit from business contracts consummated and partially performed in Texas. A significant portion of the Defendant's income is derived from Texas patrons; obviously, the Defendant's "special guest" system of solicitation is designed to take advantage of Texas laws prohibiting gambling. The basic equities of the present fact situation favor maintenance of this lawsuit in the Eastern District of Texas.

In balancing the convenience of the Plaintiffs in pursuing this cause locally against the inconvenience of the corporate defendant, a significant factor to consider is the public interest of the forum state in redressing the resident plaintiffs' claim. Gooch, *Jurisdiction over Foreign Corporations under Article 2031b,* 39 Tex.L.Rev. 214, 220 (1960). Protecting the potential rights of a Texas plaintiff under a contract made with a nonresident defendant and partially performed in Texas is in the public interest of the Eastern District of Texas. The Plaintiffs are Texas domiciliaries, and the contract in issue was consummated and partially performed in Texas; this state has an interest in this dispute. While the Court recognizes that the Defendant may suffer some inconvenience by being required to litigate this action in Texas, the Court holds that requiring the Defendant to defend this lawsuit in Texas will not violate the Defendant's due process rights.

The substantial and continuous nature of the Defendant's activities in Texas make the exercise of jurisdiction by this Court reasonable.

The Defendant's motion to dismiss for lack of *in personam* jurisdiction is hereby overruled.